# EXHIBIT A

Christian V. McOmber, Esq. – NJ ID #012292010
 cvm@njlegal.com
Peter D. Valenzano, Esq. – NJ ID #037892010
 pdv@njlegal.com
Ashley E. Malandre, Esq. – NJ ID #028322011
 aem@njlegal.com
McOMBER McOMBER & LUBER, P.C.
54 Shrewsbury Avenue
Red Bank, New Jersey 07701
(732) 842-6500 Phone
(732) 530-8545 Fax
*Attorneys for Plaintiff, Chad Maldonado*

| | |
|---|---|
| CHAD MALDONADO,<br><br>                    Plaintiff,<br><br>    vs.<br><br>DEVRY UNIVERSITY, INC.; REGINA CAMPBELL; SCARLETT HOWERY; LAURA KNUTH; ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>                    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION:MIDDLESEX COUNTY<br><br>DOCKET NO.:<br><br>Civil Action<br><br>**COMPLAINT & DEMAND FOR TRIAL BY JURY; FIRST DEMAND FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES DIRECTED TO ALL DEFENDANTS** |

Plaintiff, Chad Maldonado ("Plaintiff"), by way of Complaint against Defendant DeVry University, Inc. ("Defendant DeVry"), Defendants ABC Corporations 1-5 (fictitious names describing presently unknown business entities) (along with "Defendant DeVry," collectively referred to as the "Corporate Defendants"), Defendant Regina Campbell ("Defendant Campbell"), Defendant Scarlett Howery ("Defendant Howery"), Defendant Laura Knuth ("Defendant Knuth"), and Defendants John Does 1-5 (fictitious names describing presently unidentified individuals) (along with "Defendant Campbell," "Defendant Howery," "Defendant Knuth," collectively referred to as the "Individual Defendants"), alleges as follows:

## **INTRODUCTION**

This is a compelling and provable disability discrimination claim brought under New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1, et seq., (the "NJLAD"). Plaintiff, Chad Maldonado, worked diligently for Defendant DeVry for over twenty (20) years and received consistent commendations and promotions throughout his tenure. Unfortunately, despite Plaintiff's dedication and loyalty to Defendant DeVry, he was subject to egregious forms of discrimination and retaliation after his return from an approved medical leave to treat his disability, depression, and anxiety.

Immediately upon return from medical leave, Plaintiff's daily job responsibilities were unilaterally changed by management. Nevertheless, Plaintiff continued to perform to the best of his ability. Less than three months later, however, Plaintiff was placed on a Performance Improvement Plan ("PIP"), which was extended two (2) times. Given his steady performance, Plaintiff protested the legitimacy of the PIP, but Defendant DeVry persisted. Paradoxically, Plaintiff then received his annual performance review, which noted his performance met Defendant DeVry's expectations. Accordingly, it is transparently obvious Plaintiff was placed on a PIP, and ultimately terminated, in direct retaliation for taking a leave of absence as his performance was undeniably strong.

Fortunately, New Jersey law provides redress for employees such as Plaintiff who were subjected to disability discrimination and retaliation. Accordingly, Plaintiff brings this action pursuant to the NJLAD to assert his right to work in an environment free from such discrimination and retaliation.

2

## PARTIES

1. Plaintiff Chad Maldonado is a 47-year-old man residing in Lyndhurst, New Jersey, and at all times relevant hereto was employed by Defendant DeVry University as a Dean of Campus and University Partnerships.

2. Defendant DeVry is a for-profit university located at 517 Rt 1, Suite 1000, Iselin, NJ 08830. At all times relevant hereto, Defendant DeVry University is an "employer" as defined by the LAD.

3. Defendant Campbell, at all times relevant hereto, is the Regional Dean of Campus and University Partnerships. This claim is brought against Defendant Campbell in her individual capacity and as an agent and/or servant of Defendant DeVry University who aided and abetted the discriminatory conduct alleged herein. At all times relevant hereto, Defendant Campbell is an "employer" as defined by the LAD.

4. Defendant Howery at all times relevant hereto, is the Vice President of Campus University Partnerships. This claim is brought against Defendant Howery in her individual capacity and as an agent and/or servant of Defendant DeVry University who aided and abetted the discriminatory conduct alleged herein. At all times relevant hereto, Defendant Howery is an "employer" as defined by the LAD.

5. Defendant Knuth at all times relevant hereto, is the Director of Colleague Relations. This claim is brought against Defendant Knuth in her individual capacity and as an agent and/or servant of Defendant DeVry University who aided and abetted the discriminatory conduct alleged herein. At all times relevant hereto, Defendant Knuth is an "employer" as defined by the LAD.

6. Defendants ABC Corporations 1-5 are currently unidentified business entities that have acted in concert with Defendant DeVry University, and/or currently unidentified business entities responsible for the creation and/or implementation of anti-discrimination and/or anti-

retaliation policies of Defendant DeVry University, and/or current unidentified business entities that may have liability for the damages suffered by Plaintiff under any theory advanced herein. Defendants DeVry University and ABC Corporations 1-5 will henceforth be referred to as "Corporate Defendants."

7. Defendants John Does 1-5 are currently unidentified individuals who acted in concert with Defendants and/or currently unidentified individuals responsible for the creation and/or implementation of anti-discrimination and/or anti-retaliation policies of Defendant DeVry University and are currently unidentified individuals who may have liability for the damages suffered by Plaintiff under any theory advanced herein. Defendants Campbell, Howery, and Knuth and John Does 1-5 will henceforth be referred to as "Individual Defendants."

## FACTS COMMON TO ALL CLAIMS

8. Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey specific policies prohibiting discrimination based on disability.

9. Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey policies and procedures prohibiting workplace retaliation.

10. Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey a zero-tolerance policy when it comes to workplace discrimination and retaliation.

11. Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey a policy providing for a reasonable medical accommodation to disabled employees.

4

12. Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey policies and procedures prohibiting workplace retaliation or discrimination against an employee who sought a reasonable accommodation for a medical disability.

13. Plaintiff commenced his employment with Defendant DeVry University on December 16, 2002 as an Admissions Representative.

14. At all times throughout his employment, Plaintiff performed his job responsibilities competently and diligently, loyally committed to Corporate Defendants. Indeed, over his twenty (20) year career with DeVry University, Plaintiff was promoted numerous times, and his most recent position was Dean of Campus and University Partnerships.

15. Despite Plaintiff's demonstrated ability to maintain the very highest level of job performance, his employment came to a screeching halt after Plaintiff was thrust into a work environment rife with discrimination and retaliation.

### A. **Plaintiff is Subjected to Discrimination and Retaliation After Taking a Medical Leave of Absence.**

16. In February 2019, Plaintiff's father unexpectedly passed away. Then, within a span of four months in 2020, Plaintiff suffered the loss of two Uncles and his lifelong best friend.

17. Naturally, in July 2020, Plaintiff experienced depression and anxiety as a result of the tremendous loss he faced and sought treatment from a therapist.

18. From July 2020-December 2021, Plaintiff continued his treatment and began to have additional health issues because of his medical conditions.

19. On or about December 10, 2021, Plaintiff sought and was granted a medical leave of absence.

5

20. On February 25, 2022, Plaintiff returned to work with a part-time schedule. Specifically, Plaintiff was approved to work 25 hours per week until March 27, 2022. Then, on or about March 28, 2022, Plaintiff returned to full-time employment with Defendant DeVry.

21. Immediately after returning full-time, Plaintiff's work environment took an abrupt turn for the worse, as he was suddenly subjected to discrimination and retaliation. Indeed, Plaintiff's job responsibilities entirely shifted.

22. For example, Defendants told Plaintiff he could no longer work on Non-Profit Organizations, Corporate Accounts, or Community College Accounts, which previously consumed ninety percent (90%) of his portfolio. Rather, Plaintiff was required to focus on State and Local Government accounts, which consisted of only ten percent (10%) of his daily work duties prior to his medical leave of absence.

23. Plaintiff was shocked by this since he had long-established relationships with representatives of these accounts, not to mention, his breadth of knowledge with respect to the accounts themselves.

24. In early April 2022, Plaintiff spoke to Defendants about this change of responsibility, but he was merely told he should accept it as he previously worked on these accounts albeit to a minimal degree.

25. On or about April 27, 2022, Plaintiff spoke with Bill Caruso, Defendant DeVry's Chief Legal Officer, and requested to transition into a regulatory role doing more internal, investigation-based work that reflected his established skills. Plaintiff was told there were no positions available at that time, but Mr. Caruso anticipated several positions were going to be posted in the coming months.

6

26. On June 3, 2022, Defendant Campbell placed Plaintiff on a Performance Improvement Plan ("PIP"). Plaintiff was told, since his return, he "conducted subpar prospecting and a minimum of events yielding no inquiries which has led to minimum applications."

27. As a result of being issued a PIP, Plaintiff was now unable to apply for internal jobs or transfer to another role. In addition, Plaintiff's eligibility for paid time off and his payout of such, if terminated, was affected. Specifically, Plaintiff would not be able to receive compensation for any paid time off he had carried over for the past twenty (20) years if he were to be terminated.

28. Nevertheless, Plaintiff worked diligently to achieve and surpass the directives set forth in his PIP. Further, Plaintiff left his membership with Defendant DeVry's Empower Team to solely focus on achieving his goals.

29. Plaintiff came to realize, however, there was a system-wide practice of unethical data collection where he, and other Deans of Campus and University Partnerships, were not receiving credit for their efforts. Specifically, Plaintiff and his colleagues would only receive credit for requests placed to learn more about the university through the employee's individual link; however, most individuals would submit a request through the university's site, which they would not receive credit for.

30. Plaintiff, who was responsible for working with the New York City Police Department ("NYPD"), was not credited for twenty-eight (28) university applications and eleven (11) new student enrollments from his work with the NYPD.

31. Without the NYPD members or other local government accounts clicking on his individualized link, Plaintiff had no means to receive credit towards his PIP, despite being the only point of contact between the NYPD and the university.

7

32. On or about July 26, 2022, Plaintiff attended a meeting with Defendant Campbell, Jacqueline Christophe-Hayott, and Christine Ettehad wherein he complained about the potential misrepresentations with the data collection. Plaintiff also submitted data produced by Dan Berman, Manager Financial Operations & Analysis in support of his complaint. Defendant Campbell, however, was indifferent to Plaintiff's complaint and merely stated his complaint was unsubstantiated.

33. On or about August 12, 2022, Defendant Campbell told Plaintiff his PIP would be extended an additional thirty (30) days. In September, he was told the Plan was extended another thirty (30) days. Plaintiff's PIP was extended a second time on September 19, 2022.

34. To add insult to injury, it appears Defendant Campbell recycled a PIP of another employee, "Keana," as this name is used therein.

35. Notwithstanding, despite this extension, on or about September 16, 2022, Plaintiff received his Annual Review, which indicated his performance met expectations and he was provided with a merit raise of three (3) percent.

36. On September 27, 2022, Plaintiff emailed Defendant DeVry's Human Resources Department requesting a meeting with Nichole Schemmer, Defendant DeVry's Human Resources Business Consultant, to discuss his concerns regarding the PIP as well as his concerns about the discriminatory treatment in the workplace.

37. On October 05, 2022, Plaintiff verbally complained to Ms. Schemmer that he was being discriminated against and retaliated against because of his disability and use of leave.

38. On October 06, 2022, Plaintiff complained in writing to Ms. Schemmer that Defendant DeVry's leadership, including Defendant Campbell, was retaliating against him

8

because of his medical disability. Plaintiff further wrote the PIP was harassment as it blocked career progression and created obstacles for him to use earned paid time off.

39. On October 14, 2022, Plaintiff sent a follow-up email to Ms. Schemmer.

40. On or about October 17, 2022, Defendant Knuth contacted Plaintiff and apologized to him for the delay. Defendant Knuth further advised Plaintiff that his concerns were escalated to her attention for review, and she would investigate his claims.

41. On October 21, 2022, Defendant Knuth told Plaintiff the case remains under review and she would provide an update the following week.

42. On or about October 27, 2022, Plaintiff contacted Defendant Knuth inquiring about the status of her investigation. Defendant Knuth responded and asked to meet via Microsoft Teams later that day.

43. During this meeting, Defendant Knuth told Plaintiff his claims were unsubstantiated. Defendant Knuth did not address Plaintiff's concerns about Defendant DeVry's misrepresentations. Plaintiff, however, reiterated his concerns about his alleged performance and his use of leave. Defendant Knuth stated she would reevaluate his claims and get back to him shortly.

44. On November 01, 2022, Plaintiff had a follow-up meeting with Defendant Knuth via Microsoft Teams. Defendant Knuth stated Plaintiff's leave of absence had no bearing on their decision to issue him a PIP. Defendant Knuth, again, found Plaintiff's claims to be unsubstantiated.

45. Plaintiff disagreed with Defendant Knuth's findings and reiterated the PIP and PIP extensions continued to block his ability to apply for internal positions and complicated utilizing accrued paid time off. Plaintiff further reiterated he felt he was being retaliated against for using leave.

9

46. Four days later, on November 04, 2022, Defendant Campbell, Defendant Knuth, and Defendant Howery terminated Plaintiff's employment for purportedly failing to meet the expectations set forth in his PIP. None of the Defendants provided Plaintiff with any examples of his non-performance.

47. The truth, however, is Defendants orchestrated a campaign of discriminatory and retaliatory actions, including his termination, simply because Plaintiff utilized a medical leave of absence.

48. As a result of Defendant DeVry's discriminatory conduct, Plaintiff suffered and continues to suffer economic and emotional distress damages.

## COUNT ONE

## NJLAD – DISPARATE TREATMENT & DISCRIMINATION DUE TO DISABILITY

49. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

50. The treatment received from Defendants DeVry, ABC Corporations 1-5, and John Does 1-5, jointly or severally, violates the NJLAD which prohibits unlawful employment discrimination against any person because of race, religion, age, gender, **handicap**, marital status, national origin, sexual orientation, etc.

51. Plaintiff's medical condition(s) fit the definition of handicap under the NJLAD.

52. The above-described conduct would not have occurred but for Plaintiff's disability.

53. Defendants did not have an effective anti-discrimination policy in place, Defendants have not maintained an anti-discrimination policy that is current and effective, and Defendants' anti-discrimination policy existed in name only.

54. Defendants did not maintain useful formal and information complaint structures for victims of discrimination, harassment, or retaliation.

10

55. Defendants did not properly train their supervisors and/or employees on the subject of discrimination, harassment, and retaliation.

56. Defendants failed to institute appropriate monitoring mechanisms to check the effectiveness of the policies and complaint structures.

57. Defendants did not have a commitment from the highest levels of management that discrimination and harassment will not be tolerated.

58. As a result of the above harassing and discriminatory conduct, Plaintiff experiences ongoing and debilitating emotional distress and experiences significant economic damages.

59. As the employer and/or supervisor of Plaintiff, Defendants are vicariously, strictly, and/or directly liable to Plaintiff pursuant to NJLAD, N.J.S.A. 10:5-1, et seq., in that Defendants subjected Plaintiff to discriminatory adverse employment actions; and/or the affirmative acts of discrimination committed by Individual Defendants occurred within the scope of their employment; the creation of the hostile work environment was aided by Defendants in delegating power to Individual Defendants to control the day-to-day working environment; and/or Defendants were deliberately indifferent, reckless, negligent, and/or tacitly approved the discrimination and/or hostile work environment; and/or Defendants failed to create and/or have in place well-publicized and enforced anti-discrimination policies, effective formal and informal complaint structures, training, and/or monitoring mechanisms for same despite the foreseeability of discrimination in the workplace; and/or by having actual knowledge of the discrimination of Plaintiff and failing to promptly and effectively act to stop it.

60. Defendants aided, abetted, incited, compelled and/or coerced, and/or attempted to aid, abet, incite, compel and/or coerce Individual Defendants to commit acts and omissions that were in violation of the NJLAD by committing affirmatively discriminatory acts towards Plaintiff

11

in violation of the supervisory duty to halt or prevent discrimination, rendering all Defendants individually and collectively liable to Plaintiff pursuant to N.J.S.A. 10:5-12(e).

61. As a proximate cause of the joint and several unlawful acts and omissions of the Defendants described at length herein, Plaintiff was terminated from his position of employment with Defendant DeVry.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, and attorneys' fees and costs of suit. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

A. Reinstatement of employment and all benefits;
B. Back pay and benefits;
C. Front pay and benefits;
D. Compensatory damages;
E. Consequential damages;
F. Reinstatement;
G. Punitive damages;
H. Prejudgment interest and enhancements to off-set negative tax consequences;
I. Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);
J. Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable;
K. Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;
L. Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;
M. Ordering Defendants to undergo anti-discrimination training;
N. Ordering Defendants to undergo anti-retaliation training;
O. Ordering Defendants to undergo anti-harassment training;
P. Ordering Defendants to undergo workplace civility training;
Q. Ordering Defendants to undergo bystander intervention training;

12

R. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;
S. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;
T. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;
U. Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;
V. Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;
W. Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;
X. Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;
Y. Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and
Z. Such other relief as may be available and which the Court deems just and equitable.

## COUNT TWO

## NJLAD – FAILURE TO ACCOMMODATE

62. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

63. The conduct of Defendants as detailed above constitutes disability discrimination, specifically the failure to reasonably accommodate disabled persons as required by New Jersey law.

64. As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the NJLAD, punitive damages, pre- and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

13

A.  Reinstatement of employment and all benefits;
B.  Back pay and benefits;
C.  Front pay and benefits;
D.  Compensatory damages;
E.  Consequential damages;
F.  Reinstatement;
G.  Punitive damages;
H.  Prejudgment interest and enhancements to off-set negative tax consequences;
I.  Any and all attorneys' fees, expenses and/or costs, including but not limited to court costs, expert fees, and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);
J.  Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable;
K.  Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;
L.  Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;
M.  Ordering Defendants to undergo anti-discrimination training;
N.  Ordering Defendants to undergo anti-retaliation training;
O.  Ordering Defendants to undergo anti-harassment training;
P.  Ordering Defendants to undergo workplace civility training;
Q.  Ordering Defendants to undergo bystander intervention training;
R.  Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;
S.  Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;
T.  Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;
U.  Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;
V.  Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;
W.  Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;
X.  Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;
Y.  Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and
Z.  Such other relief as may be available and which the Court deems just and equitable.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the NJLAD, punitive damages, pre- and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just.

## COUNT THREE

## NJLAD – RETALIATION/IMPROPER REPRISAL

65. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

66. Plaintiff complained and/or protested against the continuing course of discriminatory and retaliatory conduct set forth at length above. Defendants had knowledge about those complaints and/or protests.

67. Defendants are vicariously, strictly, and/or directly liable to Plaintiff for unlawful retaliation in violation of the NJLAD pursuant to N.J.S.A. 10:5-12(d).

68. As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, and attorneys' fees and costs of suit. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the LAD as follows:

A. Reinstatement of employment and all benefits;
B. Back pay and benefits;
C. Front pay and benefits;
D. Compensatory damages;
E. Consequential damages;
F. Reinstatement;
G. Punitive damages;

15

H. Prejudgment interest and enhancements to off-set negative tax consequences;

I. Any and all attorneys' fees, expenses and/or costs, including but not limited to court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

J. Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;

K. Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;

L. Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;

M. Ordering Defendants to undergo anti-discrimination training;

N. Ordering Defendants to undergo anti-retaliation training;

O. Ordering Defendants to undergo anti-harassment training;

P. Ordering Defendants to undergo workplace civility training;

Q. Ordering Defendants to undergo bystander intervention training;

R. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;

S. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;

T. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;

U. Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;

V. Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

W. Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

X. Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;

Y. Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

Z. Such other relief as may be available and which the Court deems just and equitable.

## COUNT FOUR

## NJLAD – WRONGFUL TERMINATION

66. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

16

67. Plaintiff complained and/or protested against the continuing course of discriminatory and retaliatory conduct set forth at length above. Defendants had knowledge about those complaints and/or protests.

68. As a direct result, Defendants terminated Plaintiff's employment.

69. Defendants are vicariously, strictly and/or directly liable to Plaintiff for unlawful, wrongful termination in violation of the LAD.

70. As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained emotional and pecuniary damages.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, punitive damages, pre- and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just.

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to Rule 4:10-2(b), demand is made that Defendants disclose to Plaintiff's attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff's attorney with true copies of those insurance agreements or policies, including but not limited to any and all declaration sheets. This demand shall include and cover not only primary insurance coverage, but also any excess, catastrophe, and umbrella policies.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Chad Maldonado*

By: */s/ Peter D. Valenzano*
PETER D. VALENZANO, ESQ.

Dated: April 27, 2023

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Peter D. Valenzano, is hereby designated as trial counsel for Plaintiff.

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby certified that, to the best of my knowledge, there are no other civil actions or arbitration proceedings involving this matter with respect to this matter and no other parties need to be joined at this time.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Chad Maldonado*

By: */s/ Peter D. Valenzano*
PETER D. VALENZANO, ESQ.

Dated: April 27, 2023